EXHIBIT "A"

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In Re** | : | Chapter 11 |
| | : | |
| **CONVERTING SOLUTIONS, L.P.,** | : | |
| | : | |
| Debtor. | : | Case No. 11-12122(MFW) |
| | : | |

## STIPULATION AND INTERIM ORDER REGARDING

## USE OF CASH COLLATERAL

AND NOW, this ____ day of _____, 2011 ("Effective Date"), this matter coming to be heard on the request of Converting Solutions LP, debtor and debtor-in-possession ("Debtor"), for interim use of cash collateral and granting of adequate protection (the "Motion"), and on the Debtor's request for entry of an interim order on an expedited basis pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedures ("Bankruptcy Rules") the Court having considered the Motion and any evidence and representations at a hearing pursuant to 11 U.S.C. § 363 and Rule 4001 of the Bankruptcy Rules:

THE DEBTOR AND FIRSTTRUST BANK ("BANK") AGREE, AND BASED UPON SUCH AGREEMENT, THE COURT HEREBY FINDS AND CONCLUDES THAT:

A. <u>Bankruptcy Filing</u>. The Debtor filed a voluntary petition (the "Petition") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court") on July 4, 2011 (the "Petition Date").

B.  Debtor-in-Possession. Since the Petition Date, the Debtor has remained in possession of its assets and is operating its business as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

C.  Jurisdiction; Venue. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this chapter 11 case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.  Pre-Petition Loan Documents. Prior to the Petition Date, Bank made various loans, advances and extensions of credit to or for the benefit of the Debtor (the "Pre-Petition Loans") pursuant to the following documents and each of the documents, instruments, agreements, certificates and statements, including but not limited to UCC financing statements, executed in connection therewith (collectively, the "Pre-Petition Loan Documents"):

1.  A line of credit (the "Credit Line") as evidenced by a promissory note dated August 9, 2006 in the principal amount of up to $1,000,000.00 executed and delivered by Debtor to Bank ("Note");

2.  Business Loan Agreement dated August 9, 2006 executed and delivered by Debtor to Bank ("Business Loan Agreement") further evidencing the Credit Line;

3.  Commercial Security Agreement dated August 9, 2006, executed and delivered by Debtor to Bank ("Commercial Security Agreement");

4.  A $250,000 Term Loan (the "Term Loan") as evidenced by Promissory Note dated March 13, 2007, in the original principal amount of $250,000.00;

5.  Business Loan Agreement dated March 13, 2007, in relation to the Term Loan;

6. A change in Terms Agreement dated July 31, 2008, with respect to the Credit Line;

7. A change in Terms Agreement dated July 31, 2008, with respect to the Term Loan;

8. Commercial Security Agreement dated March 13, 2007; and

9. UCC-1 Financing Statement filed October 30, 2006, with the Secretary of State for the State of Delaware at filing number 63995123; and

10. Forbearance Agreement dated September, 2009, by and among the Debtor, Bank, Eric Seltzer and Darryl Cutler.

E. <u>Pre-Petition Collateral</u>. By virtue of the Pre-Petition Loan Documents, Bank has a valid first priority lien on and security interest in substantially all personal property owned by the Debtor, as more fully described in the Security Agreement and UCC Financing Statement (the "Pre-Petition Collateral").

F. <u>Acknowledgment of Pre-Petition Loan Documents:</u> The Debtor hereby acknowledges and agrees that: (1) the Pre-Petition Loan Documents are valid, binding and enforceable against the Debtor, and all of the terms and conditions thereof are binding upon the Debtor. Said determination shall be binding on the Debtor-in-Possession, but shall not bind any Committee of Unsecured Creditors (the "Committee"), appointed under § 1102 of the Bankruptcy Code, who shall have a minimum of 60 days (or such longer period as the Committee may obtain for cause shown before the expiration of such period) from the date of the order approving the appointment of counsel to the Committee to investigate the facts and bring any appropriate proceedings as representative of the estate. Additionally, any party in interest other than the Committee has a minimum of 60 days (or a longer period for cause shown before

the expiration of such period) from the entry of a final cash collateral order to investigate the facts and file a motion seeking authority to bring any appropriate proceedings as representative of the estate.

G. <u>Acknowledgment Amount of Pre-Petition Obligation</u>. The Debtor acknowledges and agrees that pursuant to the Pre-Petition Loan Documents, it was indebted and liable to Bank in the aggregate amount of $686,250.00 as of July 4, 2011 (the "Pre-Petition Obligation"). Interest continues to accrue at $190.62 *per diem*, (10% per annum) subject to paragraph F. The Pre-Petition Loans matured by their terms on or about May 31, 2009.

H. <u>Acknowledgment of Liens and Priority</u>. The Debtor acknowledges and agrees that pursuant to the Pre-Petition Loan Documents, Bank holds a perfected security interest which Debtor believes is a first priority lien upon substantially all of Debtor's property as security for the Pre-Petition Loans (the "Pre-Petition Liens"), subject to paragraph F.

I. <u>Cash Collateral</u>. The Debtor's cash and proceeds from the Pre-Petition Collateral are "cash collateral," as defined by 11 U.S.C. §363(a), in which Bank has perfected Pre-Petition Liens.

J. <u>Good Cause</u>. Good cause has been shown for the entry of this Stipulation and Order. Among other things, entry of this Stipulation and Order will: (1) minimize disruption of the Debtor's business and operations; and (2) permit the Debtor to meet payroll and other operating expenses and retain an ability to maintain normal operations.

K. <u>Binding Order</u>. All of the findings of fact, terms and conditions, and order provisions set forth in this Stipulation and Order shall be final and binding on the Debtor, unless such creditor or party in interest files a written objection thereto with the Court with respect

thereto, serves such objection upon the undersigned counsel on or before ten (10) business days after entry, and the Court thereafter finds in favor of such objecting party.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AND AGREED AMONG THE PARTIES HERETO THAT:**

1. <u>Use of Cash Collateral</u>.

    (a) <u>Debtor's Budget</u>. Subject to the provisions of this Stipulation and Order, the Debtor is authorized to use cash collateral for ordinary and necessary operating expenses incurred by the Debtor through and including August 15, 2011, in the amounts for each category of expense set forth in the projection of cash flow ("Budget") attached hereto for the expense categories ("Categories") set forth therein. *See* Budget attached as Attachment "A". The Debtor may only use cash collateral for the Categories set forth on the Budget, but to the extent it does not use cash collateral in an amount set forth on the Budget, however, such difference may not be carried over to any other Category of expense and may be used in a subsequent period. Further, Debtor may spend up to 10% more than the budgeted amount in any monthly period provided the total budget is not exceeded. Debtor's compliance with the foregoing may be monitored by Bank in any reasonable fashion.

    (b) <u>Post-Petition Liens</u>. As adequate protection for Bank's consent to the Debtor's use of cash collateral, Bank is hereby granted valid, binding, enforceable and perfected, first priority replacement security interests in and replacement on all of Debtor's assets (the "Collateral"), subject only to statutory priming liens, if any, of any, Governmental Unit (as defined in Section 101(27) of the Bankruptcy Code) but only to the extent such priming liens are valid, enforceable, non-avoidable and perfected prior to the Petition (collectively, the "Post-

Petition Liens") on the Pre-Petition Collateral and with the same Priority as Bank previously maintained (collectively, the "Collateral"), subject to fees due under 28 U.S.C. Section 1930.

(c) <u>Perfection</u>. All Post-Petition Liens on the Collateral shall be, and hereby are, deemed perfected by entry of this Stipulation and Order, and no further notice, filing or other act shall be required to effect such perfection; <u>provided, however,</u> that Bank may, in its sole discretion, choose to file financing statements and other similar documents, and all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Stipulation and Order, and shall have the priority granted herein.

(d) <u>Payments</u>. As additional adequate protection, the Debtor shall pay $5,800.00 plus a maximum of $7,500.00 attributable to Bank's reasonable out of pocket expenses as required the Pre-Petition Loan Documents to Bank on or before the first business day of each month of this Stipulation. Should the Bank incur additional reasonable out of pocket expenses beyond $7,500.00 during the period of this Stipulation, such additional expenses shall be included as part of the Pre-Petition Obligation but shall not be payable as part of this Stipulation.

(e) <u>Application of Proceeds or Payments</u>. Proceeds or payments received by Bank with respect to the Pre-Petition Collateral and the Collateral shall be applied in accordance with the Loan Documents. Notwithstanding receipt of the Adequate Protection Payments, Bank has not acknowledge, and the entry of this Stipulation and Order is not an acknowledgement or agreement by Bank, that it is adequately protected.

(f) <u>Cash Proceeds</u>. Upon the entry of this Stipulation and Order, weekly, on or before Wednesday of each week, and upon the reasonable request of Bank, the Debtor shall account to Bank for all cash, checks, notes, drafts, instruments, acceptances or other

property representing cash or other proceeds of the Pre-Petition Collateral in the Debtor's possession or control. All cash, checks, notes, drafts, instruments, acceptances and other property in the nature of items of payment representing proceeds of property and interests in property of the Debtor (collectively, "Cash Proceeds"), in the Debtor's possession or control as of the Petition Date, shall be deemed proceeds of the Pre-Petition Collateral. All Cash Proceeds shall be deposited in the debtor-in-possession account maintained by the Debtor.

(g) Maturity. The "Termination Date" shall mean the earliest date on which any one of the following events occurs: (i) August 15, , 2011, unless otherwise extended by mutual agreement in writing and approved by Court order; or (ii) an Event of Default (as hereinafter defined). Any agreement to extend the Termination Date shall be at Bank's sole discretion.

(h) Termination of Cash Collateral. Upon and following the Termination Date, the Debtor shall no longer be authorized to use cash collateral, except as otherwise agreed to by and between the parties or as ordered by the Court.

(i) Conditions Precedent. Bank's obligations hereunder are subject to the Debtor and Bank having executed and delivered this Stipulation and Order, and the Stipulation and Order shall have been entered as an Order of the Court;

2. Further Documents. The Debtor shall execute and deliver to Bank all agreements, financing statements, instruments and any other documents and/or information as Bank may in its sole discretion request to evidence, confirm, validate or perfect the liens granted pursuant hereto.

3. Inspection and Access Rights. Without limiting the rights of access and information afforded Bank under the Pre-Petition Loan Documents, the Debtor shall permit

representatives, agents, consultants and/or employees of Bank to have reasonable access to its premises and its records at all times during normal business hours and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

4. <u>Debtor's Covenants</u>. As a condition for Bank's consent to Debtor's use of cash collateral, Debtor hereby covenants and agrees that until all of the Pre-Petition Obligations of the Debtor to Bank have been paid and satisfied in full, the Debtor shall do all of the following:

(a) <u>Reporting</u>. In addition to the reporting required under the Pre-Petition Loan Documents, the Debtor shall prepare and deliver to Bank, on or before each Wednesday prior to the Termination Date a report indicating the collections, disbursements and cash balances on a Category basis (as set forth on the Budget) for the prior week.

(b) <u>Maintenance of Collateral</u>. The Debtor shall maintain and preserve the Collateral, subject to ordinary wear and tear.

(c) <u>Collections</u>. The Debtor shall use its best efforts to collect payment of all receivables.

(d) <u>Insurance</u>. The Debtor shall maintain all insurance as required by the Pre-Petition Loan Documents.

5. <u>Non-waiver</u>. Except as expressly provided to the contrary in this Stipulation and Order, the entry of this Stipulation and Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights of Bank under the Bankruptcy Code or under applicable non-bankruptcy law. Further, Bank shall not, by

reason of this Stipulation and or otherwise, be deemed to have waived any default or Event of Default by the Debtor under the Pre-Petition Loan Documents.

6. <u>Adequate Protection; No Further Commitments</u>. Except as otherwise provided herein, nothing herein contained shall: (i) affect or impair Bank's right to seek additional adequate protection of its interests in the Pre-Petition Collateral and/or the Collateral; or (ii) be deemed to constitute a further commitment by Bank to consent to the use of cash collateral, or to make advances to the Debtor or to finance the Debtor's chapter 11 case.

7. <u>Preservation of Bank's Rights</u>. Nothing contained herein shall be deemed to be a waiver by Bank of any Default under the Pre-Petition Loan Documents, nor shall anything contained herein be deemed to be an agreement by Bank to forbear from enforcing, or a waiver by Bank of, any rights or remedies under the Pre-Petition Loan Documents or applicable law. Subject to the provisions of the Bankruptcy Code and the jurisdiction of the Court, Bank hereby reserves and preserves all of the rights and remedies available to it under the Pre-Petition Loan Agreements and/or applicable law.

8. <u>Events of Default</u>. The occurrence of any of the following shall, unless waived by Bank, constitute an event of default (each an "Event of Default") hereunder:

(a) The Debtor shall fail to keep, observe or perform any of its agreements or undertakings hereunder including, but not limited to, all payment requirements and reporting provisions contained herein;

(b) The Debtor shall knowingly furnish or knowingly make any false, inaccurate or materially incomplete representation, warranty, certificate, report or summary in connection with or under this Stipulation and Order; or

(c) The Debtor's chapter 11 case is converted to a case under chapter 7. Bank shall provide the Debtor three days written notice of any event of default and Debtor shall be able to cure any such event of default during such three day period before Debtor's right to use cash collateral shall terminate.

(d) The amount of the debtors receivables as reflected on their ordinary report falls lower than $260,000.00.

9. Miscellaneous.

(a) Survival. The Debtor's representations and warranties, acknowledgments and waivers set forth in this Stipulation and Order shall survive the termination hereof.

(b) Bank's Rights. The rights, powers and remedies of Bank provided in this Stipulation and Order and the Pre-Petition Loan Documents are cumulative and not exclusive of any right, power or remedy provided by law or equity.

(c) Integration. This Stipulation and Order constitutes the sole agreement of Bank and the Debtor with respect to the subject matter hereof and supersedes all oral negotiations and prior writings with respect to the subject matter hereof.

(d) Amendments. No amendment or extension of this Stipulation and Order, and no waiver of any one or more of the provisions hereof shall be effective unless set forth in writing and signed by the party sought to be charged.

(e) Successors and Assigns. This Stipulation and Order: (i) shall be binding upon Bank and the Debtor and where applicable, their respective predecessors, successors, agents and permitted assigns (including, as to the Debtor, any trustee appointed or elected in this case or in a case under chapter 7); and (ii) shall inure to the benefit of Bank and

the Debtor and, where applicable, their respective predecessors, successors, agents and permitted assigns; provided, however, that the Debtor may not assign its rights hereunder without the written consent of Bank, and any such assignment or attempted assignment by the Debtor shall be void and of no effect with respect to Bank.

(f) <u>Condition Precedent</u>. The performance of the parties' respective obligations under this Stipulation and Order is expressly conditioned upon the approval by the Court of this Stipulation and Order.

(g) <u>Binding Agreement</u>. The parties hereto represent and warrant to each other that: (i) this Stipulation and Order has been, or caused to have been, duly and validly executed and delivered; (ii) the Stipulation and Order constitutes a valid and legally binding obligation subject only to approval by the Court; and (iii) this Stipulation and Order shall bind the Debtor retroactively as of the Petition Date. However, this Stipulation and Order shall be binding on the Debtor-in-Possession, but shall not bind any Committee of Unsecured Creditors (the "Committee"), appointed under § 1102 of the Bankruptcy Code, who shall have a minimum of 60 days (or such longer period as the Committee may obtain for cause shown before the expiration of such period) from the date of the order approving the appointment of counsel to the Committee to investigate the facts and bring any appropriate proceedings as representative of the estate. Further, any party in interest has a minimum of 60 days (or a longer period for cause shown before the expiration of such period) from the entry of the final cash collateral order to investigate the facts and file a motion seeking authority to bring any appropriate proceedings as representative of the estate.

(h) <u>Governing Terms</u>. To the extent there exists any conflict between the Pre-Petition Loan Documents and the terms of this Stipulation and Order, this Stipulation and Order shall govern.

(i) <u>Third Party Beneficiaries</u>. No rights are intended to be created hereunder for the benefit of any third party, donee, creditor or incidental beneficiary.

(j) <u>Notices</u>. Reports and notices required hereunder shall be delivered by hand, Federal Express or other overnight courier, or by fax transmission to:

To Bank at the following address:

White & Williams LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
**Attention:** Thomas M. Pinney, Esquire
Fax: 215-864-7123

To the Debtor at the following address:

Weir Partners, LLP
The Widener Building
1339 Chestnut Street, Suite 500
Philadelphia, PA 19107
**Attention:** Jeffrey S. Cianciulli, Esquire
Fax: (215) 665-8464

(k) <u>Governing Law</u>. This Stipulation and Order shall be governed by and construed in accordance with the internal laws of the Commonwealth of Pennsylvania and the parties agree that the Court shall have jurisdiction to interpret and enforce this Stipulation and Order.

(l) <u>Headings</u>. The headings and underscoring of articles, sections, paragraphs and clauses have been included herein for convenience only and shall not be considered in interpreting this Agreement.

(m) <u>Counterparts</u>. This Stipulation and Order may be executed by fax or email, in any number of counterparts, and by the different parties on separate counterparts. Each such counterpart shall be deemed an original, but all such counterparts together shall constitute one and the same Stipulation and Order.

10. <u>Professional Fees</u>. Bank agrees to the Debtor's use of cash collateral for the payment of professional fees and expenses set forth in the Budget. The Budget may include a monthly draw of $16,000.00 for the payment of Debtor's counsel provided that the Court enters an order approving such payments to be applied against the Debtor's counsel's allowed fees and expenses and further provided that such legal fees will be paid at the lesser of actual time billed or $4,000 per week, as the case may be. This Stipulation and Order is without prejudice to a request by the Office of the United States Trustee or any counsel to any official committee of unsecured creditors to seek a carveout for payment or administrative expenses. Likewise, this Stipulation and Order does not bind or otherwise compel Bank to agree to any such carveout.

IN WITNESS WHEREOF, the Debtor and Bank, by and through their respective counsel and representatives, have executed and delivered, or caused to be executed and delivered, this Stipulation and Order.

| WHITE & WILLIAMS LLP | WEIR & PARTNERS, LLP |
|---|---|
| By: /s/ Michael A. Suleta, Esquire<br>Michael A. Suleta, Esquire<br>824 North Market Street, Suite 902<br>P.O. Box 709<br>Wilmington, De 19899-0709<br>(302) 654-0424 - Phone<br>(302) 654-0245 - Fax | By: /s/ Jeffrey S. Cianciulli<br>Jeffrey S. Cianciulli, Esquire<br>The Widener Building<br>1339 Chestnut Street<br>Suite 500<br>Philadelphia, PA 19102<br>(215) 241-7740 – Phone<br><br>(215) 665-8464 - Fax<br>Counsel for Debtor |

So ORDERED, this \_\_\_\_\_

DAY OF JULY, 2011

_____
MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT "A"

**Converting Solutions, LP**
**Projected Statement of Cash Flow**

**Projected Cash Flow - Weekly Basis**

| | | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---:|---:|---:|---:|---:|---:|
| **Sales** | Various Customers | 62,000 | 62,000 | 62,000 | 62,000 | 68,000 | 68,000 |
| | Total Revenues collected | 62,000 | 62,000 | 62,000 | 62,000 | 68,000 | 68,000 |
| **Direct Expenses** | | | | | | | |
| | Direct Labor | 21,500 | 21,500 | 21,500 | 21,500 | 21,500 | 21,500 |
| | Machinery Expenses | 500 | 500 | 500 | 500 | 500 | 500 |
| | Equipment Rental | 500 | 500 | 500 | 500 | 500 | 500 |
| | Production & Warehouse Expenses | 6,500 | 6,500 | 6,500 | 7,000 | 7,000 | 7,000 |
| | Payroll Taxes | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| | Supplies | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| | Contractors | 300 | 300 | 300 | 300 | - | - |
| **Total Direct Expenses** | | 36,300 | 36,300 | 36,300 | 36,800 | 36,500 | 36,500 |
| **Gross Margin** | | 25,700 | 25,700 | 25,700 | 25,200 | 31,500 | 31,500 |
| **Operating Expenses** | | | | | | | |
| | Freight Expenses | 300 | 300 | 300 | 300 | 300 | 300 |
| | Office Expenses | 100 | 100 | 100 | 100 | 100 | 100 |
| | Operating Expenses | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| | Employee Benefits | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 |
| | Rent | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 |
| | Professional Fees | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| | Bank Charges | 1,650 | 1,650 | 1,650 | 1,650 | 1,650 | 1,650 |
| | Utilities | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | Insurance | 2,525 | 2,525 | 2,525 | 2,525 | 2,680 | 2,680 |
| | Maintenance and Repairs | 2,500 | 2,500 | 2,500 | 2,500 | 3,000 | 3,000 |
| | Maintenance Shop | 50 | 50 | 50 | 50 | 50 | 50 |
| | Vehicle Maintenance | 200 | 200 | 200 | 200 | 200 | 200 |
| | State Loan Payment - Interest | 245 | 245 | 245 | 245 | 245 | 245 |
| | Miscellaneous Expenses | 500 | 500 | 500 | 500 | 500 | 500 |
| **Total Operating Expenses** | | 31,820 | 31,820 | 31,820 | 31,820 | 32,475 | 32,475 |
| **Income on Operations** | | (6,120) | (6,120) | (6,120) | (6,620) | (975) | (975) |
| **Other Expenses** | | | | | | | |
| | Bank Payments - Principal | 0 | 0 | 0 | 0 | 0 | 0 |
| | Bank Payments - Interest | 966 | 966 | 966 | 966 | 966 | 966 |
| | | 966 | 966 | 966 | 966 | 966 | 966 |
| **Net increase in week cash balance** | | (7,086) | (7,086) | (7,086) | (7,586) | (1,941) | (1,941) |